IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| GREGORY JOSEPH NELSON, | ) | |
| | ) | |
| Petitioner, | ) | Case No. CV 04-001-S-LMB |
| | ) | |
| vs. | ) | |
| | ) | **MEMORANDUM DECISION** |
| RANDY BLADES, | ) | **AND ORDER** |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

Several motions are pending before the Court in this habeas corpus matter.  The

parties have consented to the jurisdiction of a United States Magistrate Judge, in

accordance with 28 U.S.C. § 636(c).  (Docket Nos. 4 & 5.)

The Court has reviewed the parties' briefing, together with the record herein, and

has concluded that these matters will be decided on the basis of the written record without

oral argument.  D. Idaho L. Civ. R. 7.1(d).  Accordingly, the Court enters the following

Order.

# I.

## BACKGROUND

In 1995, Petitioner Gregory Nelson was convicted of one count of first-degree

kidnapping and one count of lewd conduct with a minor.  On appeal, the Idaho Court of

Appeals discussed the relevant facts as follows:

According to the evidence presented at trial, appellant Gregory

**Memorandum Decision and Order - 1**

> J. Nelson [Petitioner] went to the home of K.M., a ten-year-old girl who lived in his neighborhood. Nelson knew that K.M.'s parents would not be home that morning because her father was in Alaska and her mother was at work. When Nelson arrived, he offered to pay K.M. twenty dollars if she would come and clean the travel trailer in which he lived. After an initial refusal, K.M. ultimately agreed, and Nelson drove her to his trailer. Shortly after they arrived and K.M. began cleaning, Nelson told K.M. that he was a doctor and that he wanted her to remove her shirt. When she refused, he knocked her down on the bed, held a pillow over her face until she agreed to remove her clothing, and then sexually molested her. After the incident, Nelson drove K.M. back to her house. Once there, K.M. immediately told her two brothers that Nelson had hurt her, and they took her to the house of a neighbor. The neighbor telephoned K.M.'s mother, who arrived a few minutes later as did police and paramedics. K.M. was then taken to a hospital where she was examined by a physician.

*State v. Nelson*, 953 P.2d 650, 653 (Idaho Ct. App. 1998).

After he was convicted, Petitioner was sentenced to two concurrent terms of life in prison without the possibility of parole. (State's Lodging A-2, pp. 373-78.) His direct appeal and first post-conviction action were unsuccessful. (State's Lodgings B-6, D-4, D-7.)

On January 2, 2004, Petitioner initiated the current federal habeas corpus proceeding. (Docket No. 1.) The federal case has since been stayed twice so that Petitioner could attempt to exhaust additional claims in the state courts, and he has amended his Petition to include a total of 59 claims. (Docket Nos. 14, 49, 99.) The Court has dismissed, as procedurally defaulted, Claims 4-14, 16-18, and 20-54. (Docket No. 73.) Only Claims 1-3, 15, 19, and 55-59 remain pending.

**Memorandum Decision and Order - 2**

Pursuant to the Court's scheduling order, Respondent has submitted his Answer, in addition to a Motion to Dismiss Additional Procedurally Defaulted Claims, a Motion to Dismiss Untimely Claims, and a Motion for Summary Judgment.  Petitioner has filed his own Motion for Partial Summary Judgment, and he has responded to Respondent's dispositive motions.  These matters are now ripe for the Court's decision.[1]

## II.

## LEGAL STANDARDS

A.      Statute of Limitations

This case is governed by the provisions of the Anti-terrorism and Effective Death Penalty Act (AEDPA), which includes a one-year statute of limitations.  28 U.S.C. § 2244(d)(1).  The one-year period is measured from one of four triggering events, as specified in 28 U.S.C. § 2244(d)(1)(A)-(D).  The most common is the date on which the state court judgment became final, either at the conclusion of the direct appeal or after the time for seeking an appeal expired.  28 U.S.C. § 2244(d)(1)(A).

The statute also provides for tolling (suspending) of the one-year period for all of "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending."  28 U.S.C. § 2244(d)(2).   The limitations period also may be suspended for fairness reasons when the petitioner can establish that (1) that he has been pursuing his rights diligently, and (2) that

---

[1] For simplicity, the Court shall address each of Petitioner's remaining claims in numerical order and apply the parties' arguments in their motions to those claims.

**Memorandum Decision and Order - 3**

some extraordinary circumstance stood in his way ("equitable tolling").  *Pace v.*

*DeGuglielmo*, 544 U.S. 408, 418 (2005).

      B.     <u>Exhaustion and Procedural Default</u>

      Even if a habeas petition is timely, the petitioner must have also exhausted his

state court remedies with respect to all of his constitutional claims before the federal court

can grant relief.  *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).  The exhaustion

requirement is designed to promote comity and federalism by giving the state courts an

initial opportunity to correct constitutional errors before a state prisoner turns to the

federal courts for relief.  *Duncan v. Walker*, 513 U.S. 364, 365 (1995).  State court

remedies are exhausted when no avenues for relief remain open to the petitioner, but the

federal court must also ask whether the petitioner satisfied the exhaustion requirement

*properly*.  *Boerckel*, 526 U.S. at 848.  To do so, he must have "fairly presented" his

federal claims at each level of the state's appellate review process, giving the state courts

a full opportunity to pass on and correct the alleged constitutional errors.  *Baldwin v.*

*Reese*, 541 U.S. 27, 29 (2004).

      When a petitioner attempted to raise a constitutional claim in state court, but the

state court denied or dismissed the claim after invoking a ground that is independent of

federal law and adequate to support the judgment, the claim is considered to be

procedurally defaulted.  *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991).  A

procedural default also occurs when the petitioner never raised the claim in the highest

state court and it is now clear that the state court would dismiss any new action on a

**Memorandum Decision and Order - 4**

procedural basis.  *Gray v. Netherland*, 518 U.S. 152, 161 (1996).  A federal court cannot

hear a defaulted claim absent a showing of legal cause for the default and actual prejudice

to the petitioner, or a compelling showing that the petitioner is probably innocent of the

crime.  *Coleman*, 501 U.S. at 722, 750.

C.    Claims Proceeding to the Merits

For any claim that is not procedurally barred, AEDPA requires the federal court to

defer to reasonable state court adjudications on the merits.  Accordingly, an application

for writ of habeas corpus shall not be granted unless the state court's adjudication of a

claim either:

> 1.    resulted in a decision that was contrary to, or involved an
>       unreasonable application of, clearly established Federal law, as
>       determined by the Supreme Court of the United States; or
>
> 2.    resulted in a decision that was based on an unreasonable
>       determination of the facts in light of the evidence presented in the
>       State court proceeding.

28 U.S.C. § 2254(d)(1)&(2).

For a decision to be "contrary to" federal law, the petitioner must establish that the

state court applied "a rule of law different from the governing law set forth in United

States Supreme Court precedent, or that the state court confronted a set of facts that are

materially indistinguishable from a decision of the Supreme Court and nevertheless

arrived at a result different from the Court's precedent."  *Williams v. Taylor*, 529 U.S.

362, 404-06 (2000).  To satisfy the "unreasonable application" clause of § 2254(d)(1), the

state court must have been "unreasonable in applying the governing legal principle to the

**Memorandum Decision and Order - 5**

facts of the case." *Id.* at 413.  A federal court cannot grant relief simply because it concludes in its independent judgment that the decision is incorrect or wrong; rather, the state court's application of federal law must be objectively unreasonable.  *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *Bell v. Cone*, 535 U.S. 685, 694 (2002).

To be eligible for relief under § 2254(d)(2) the petitioner must show that the decision was based upon factual determinations that were "unreasonable in light of the evidence presented in the State court proceeding."  *Id.*

With these principles in mind, the Court now turns to the claims in this case.

## III.

## ANALYSIS

A.      <u>Claim 1:   Alleged Contact with a Juror</u>

In his first claim for relief, Petitioner asserts that his Sixth and Fourteenth Amendment rights were violated because the trial court "failed to make a record, failed to advise Petitioner, and failed to inquire" after learning that a juror had found a piece of paper under his chair during the trial that contained the words "not guilty."  (Docket No. 14, p. 2.)  Respondent argues that the claim was not properly exhausted and is now procedurally defaulted.  Alternatively, he contends that the claim fails on the merits. Petitioner counters that he is entitled to judgment in his favor.

Petitioner raised this claim in the Idaho Court of Appeals during the direct appeal, but rather than re-asserting the federal constitutional basis squarely before the Idaho Supreme Court, his counsel attempted to incorporate the entire opening brief that the

Court of Appeals had considered into the brief that he filed in support of the Petition for

Review.  (State's Lodging B-8.)  In *Baldwin v. Reese*, 541 U.S. 27 (2004), the United

States Supreme Court held that "ordinarily a state prisoner does not 'fairly present' a

claim to a state court if that court must read beyond a petition or a brief (or a similar

document) that does not alert it to the presence of a federal claim in order to find material,

such as a lower court opinion in the case, that does so."  *Id*. at 32.  But *Reese* does not

speak precisely to whether an appellant's attempt to incorporate federal claims by

reference to briefing already filed in the appellate court, as here, satisfies the requirement

of fair presentation.  To answer that question, lower courts have looked to whether

incorporation by reference is allowed under state law.  *See*, *e.g.*, *Insyxiengmay v. Morgan*,

403 F.3d 657, 668-69 (9th Cir. 2005) (examining state law in relation to incorporating

documents attached to a petition).

This Court need not resolve that difficult procedural issue here because this claim

plainly fails on the merits.  *See Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) (noting

that courts might resolve easier matters where complicated procedural default issues

exist).

The Idaho Court of Appeals determined that Petitioner's allegation of jury

tampering was no more than *de minimis*:

> The note, which was written on a small scrap of torn paper, said,
> "Not guilty." It was discovered by a juror who turned it over to
> the court bailiff for delivery to the judge. The district court did
> not inform either party of the existence of the note until after the
> conclusion of the trial. Nelson contends that the note constitutes

**Memorandum Decision and Order - 7**

> impermissible outside information and that it was left in the jury box by someone attempting to influence the jury's deliberations.
>
> ***
>
> Nelson's claim of jury tampering is pure speculation. The words on the paper were not expressly related to the case at hand, and the juror who found it followed the correct course by giving it to the bailiff. There is no basis to infer that this juror or any other was influenced to the slightest degree by the scrap of paper.

*Nelson*, 953 P.2d at 659.

The clearly established federal law in this area can be traced to *Remmer v. United States*, 347 U.S. 227 (1954).  In *Remmer*, an unnamed person contacted the jury foreman and told him "that he could profit by bringing in a verdict favorable to the petitioner."  *Id.* at 228.  After an investigation by the FBI, the trial judge and the prosecutor, acting without notifying defense counsel, concluded that the statement was made in jest and no further action was taken.  *Id.*  The United States Supreme Court held that an evidentiary hearing should have been conducted as a matter of due process, noting that "[i]n a criminal case, any private communication, contact, or tampering directly or indirectly with a juror during a trial is, for obvious reason, deemed presumptively prejudicial, if not made in the pursuance of known rules of the court and the instructions and directions of the court, with full knowledge of the parties."  *Id.* at 229.

While allegations of potential jury tampering such as those in *Remmer* will require an evidentiary hearing, in the years since *Remmer* it has become equally clear that no

**Memorandum Decision and Order - 8**

evidentiary hearing is needed "in instances of 'more prosaic kinds' of misconduct or irregularities," in which "the facts have shown clearly that the alleged misconduct or bias simply could not have affected the verdict."  *See*, *e.g.*, *United States v. Bande*, 329 F.3d 1173, 1176 (9th Cir. 2003) (citing *United States v. Angulo*, 4 F.3d 843, 848 n. 7 (9th Cir. 1993).  The Idaho Court of Appeals found that this was one of those cases.  The state court's decision is not contrary to or an unreasonable application of clearly established federal law, nor is it based on an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d).

In *Remmer* it was undisputed that an outside party had offered the foreman a bribe; the only issue was whether the offer, perhaps made in jest, had any effect on the jury. Here, in contrast, the discovery of a torn piece of paper under a juror's chair with the words "not guilty" written on it does not support an inference that an outside party even attempted to contact the juror.  Instead, it appears to be a random event resulting from the unintentional disposal of the notation in this or a previous case, and there "is no basis to infer that this juror or any other was influenced to the slightest degree by the scrap of paper."  *Nelson*, 953 P.2d at 659.  No evidentiary hearing is required under federal law when "the facts have shown clearly that the alleged misconduct or bias simply could not have affected the verdict."  *See Bande*, 329 F.3d at 1176.

For these reasons, Petitioner is not entitled to habeas relief on Claim 1.

B.     Claim 2:  Denial of Continuance

In his next claim, Petitioner alleges that he was denied his Fifth, Sixth, and

**Memorandum Decision and Order - 9**

Fourteenth Amendment rights when the trial court "did not permit [him] to fairly represent himself and make a defense," based on the court's refusal to grant a requested continuance during the trial.  (Docket No. 14, p. 2.)  Respondent asserts that this claim is procedurally defaulted because, as with the first claim, Petitioner failed to re-argue the federal basis for the claim in the Idaho Supreme Court.  Respondent and Petitioner also each contend that they are also entitled to summary judgment on the merits.  Because it is plain that Petitioner is not entitled to relief, the Court will again move directly to the merits.

On the morning of the final day of trial, Petitioner moved to represent himself. After questioning by the trial court, Petitioner's motion was granted, but trial counsel was ordered to act in a standby capacity should Petitioner need assistance.  (State's Lodging A-4, pp. 658-65.)

Petitioner informed the trial court that he intended to subpoena fourteen witnesses to testify in his defense case, all but a few of whom had already testified during the trial. The trial court noted that "if the trial continues throughout the day [Friday], then you'll have the weekend to try and obtain these items."  (State's Lodging A-4, pp. 669-70.) When the trial court indicated that it would not "put the trial on hold for several weeks for you to get ready," Petitioner replied that "[o]ne day, I think, would be adequate to get all these subpoenas delivered."  (State's Lodging A-4, p. 670.)

After the State rested, Petitioner claimed that he was not ready to present any evidence "until I get these subpoenas and my theory ironed out thoroughly."  (State's

**Memorandum Decision and Order - 10**

Lodging A-4, p. 728.)  The trial court then ruled that "we're going to proceed with the trial" because Petitioner had not demonstrated "any diligence in obtaining those --trying to obtain those witnesses, or number two, any reason why the couldn't have been questioned during cross-examination."  (State's Lodging A-4, p. 738.)  Petitioner then presented the testimony of several witnesses, including himself.

On appeal, the Idaho Court of Appeals turned aside Petitioner's claim that the trial court erred in denying the continuance:

> First, the timing of Nelson's motion could hardly have been worse, coming after three days of trial. Second, his stated reason for needing a continuance, to subpoena witnesses, was not convincing. Nelson identified fourteen persons as witnesses he wished to subpoena. Of those fourteen, all but one had already been subpoenaed by the State, had testified in the State's case in chief, and had been subject to cross-examination by Nelson's counsel. Later, in presenting his defense, Nelson did in fact call four of these witnesses. On his motion for a new trial, Nelson did not identify any witness that he was unable to present due to the denial of his request for a continuance or any way in which his defense was hampered. The record does not demonstrate that any of Nelson's substantial rights have been prejudiced.

*Nelson*, 953 P.2d at 658-59.

A defendant has a Sixth Amendment right to waive the assistance of counsel and to represent himself at a criminal trial.  *Faretta v. California*, 422 U.S. 806 (1975).  The defendant's choice to invoke that right does not bring with it "a license to abuse the dignity of the courtroom [or] not to comply with the relevant rules of procedural and substantive law."  *Id*. at 834 n.46.  And while a criminal defendant also has a right to present evidence in support of his theory of defense, *see Crane v. Kentucky*, 476 U.S.

**Memorandum Decision and Order - 11**

683, 689-690 (1986) (quoting *California v. Trombetta*, 467 U.S. 479, 485 (1984), this right is subject to reasonable restrictions based upon other legitimate interests in the criminal trial process.  *United States v. Scheffer*, 523 U.S. 303, 308 (1998) (citations omitted).  A trial court's denial of a continuance rises to a due process violation only when it amounted to an unreasonable and arbitrary "insistence upon expeditiousness in the face of a justifiable request for delay."  *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964).

This Court concludes that the Idaho Court of Appeals' decision was not contrary to or an unreasonable application of *Faretta*, *Crane*, *Ungar*, or any other clearly established federal law.  Petitioner had well over a year to prepare for trial and decide whether to represent himself.  The trial court carefully questioned him about the dangers and disadvantages of self-representation, assuring that the waiver of his right to counsel was knowing and voluntary.  (State's Lodging A-4, pp. 658-664.)  Petitioner's invocation of his *Faretta* right did not allow him to sidestep "the relevant rules of procedural and substantive law," *see Id.* at 834 n.46, and his right to compulsory process was subject to reasonable restrictions, such as a requirement that he prepare his case before the middle of trial.

As noted by the Idaho Court of Appeals, Petitioner's request for a continuance was exceptionally tardy, and nearly all of the witnesses that Petitioner wanted to subpoena had already testified and been cross-examined.  Three witnesses, including the victim, were recalled and testified during the defense case, and Petitioner failed to demonstrate in state court how his defense was prejudiced in any way.  Consequently, he made no showing

**Memorandum Decision and Order - 12**

that the trial court's denial of his continuance was an unreasonable or arbitrary "insistence upon expeditiousness in the face of a justifiable request for delay."  *Ungar*, 376 U.S. at 589.  His second claim for relief shall be denied.

      C.    <u>Claim 3: Ineffective Assistance of Counsel</u>

Petitioner asserts that he was deprived of his Sixth Amendment right to the effective assistance of counsel because his trial counsel failed to file a motion to reduce his sentence under Idaho Criminal Rule 35.  Respondent does not seek dismissal of this claim on procedural grounds, and the merits are ripe for review.[2]

To prove a violation of the Sixth Amendment, a petitioner must show both that his counsel's performance was unreasonably deficient and that the defense was prejudiced as a result.  *Strickland v. Washington*, 466 U.S. 668, 686-87 (1984).  The standard for attorney performance in a criminal case is that of reasonably effective assistance, measured under prevailing professional norms.  *Strickland*, 668 U.S. at 687-88.  To establish prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  *Id*. at 694.  Further, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice ... that course should be followed."  *Id*. at 689.  That is the case here.

The state trial court noted that "[c]onsidering all of the relevant factors including

---

    [2]  Respondent does argue that no other constitutional basis for this claim except the Sixth Amendment was fairly presented in state court.  The Court agrees.

**Memorandum Decision and Order - 13**

the facts and circumstances surrounding this crime and the Petitioner's prior criminal

record, this Court does not believe that the original sentence was unduly severe, nor are

any facts alleged which would cause this Court to grant the Petitioner lenience."  (State's

Lodging C-1, p. 210.)  The Idaho Court of Appeals affirmed the lower court's decision

after concluding that it "cannot say that the district court would have abused its discretion

in denying Petitioner's Rule 35 motion.  It follows that the district court did not err in

dismissing [Petitioner's] claim of ineffective assistance for lack of proof of prejudice."

(State's Lodging D-4, p. 4.)

    This was not an unreasonable application of *Strickland*.  Even if counsel had filed

a Rule 35 motion, Petitioner cannot establish that there was a reasonable probability that

his sentence would have been reduced.  Accordingly, he is not entitled to relief on this

claim.

### D.   Claim 15:  Admission of Cumulative Hearsay

    Petitioner alleges that he was denied due process of law based on the trial court's

admission of the cumulative hearsay statements made by the victim.  (Docket No. 14, p.

15.)  He first raised this claim in this Court in his Amended Petition, filed on June 11,

2004.  (Docket No. 14.)  Respondent contends that the Amended Petition was untimely.

    The one-year statute of limitations began to run in this case on December 8, 1998,

at the conclusion of the direct appeal.  28 U.S.C. § 2244(d)(1)(A).  Applying the "mailbox

rule" for prisoner submissions, Petitioner filed his first application for post-conviction

relief in state court when he delivered it to prison officials for mailing on November 24,

**Memorandum Decision and Order - 14**

1999, thereby tolling the limitations period after 351 days had expired.  28 U.S.C. §

2244(d)(2).

The first post-conviction matter was completed on December 19, 2003.  (State's

Lodging D-8.)  However, on that date Petitioner was pursuing a second application for

post-conviction relief in the state courts, and the appeal from the dismissal of the second

application was still pending when Petition submitted his Amended Petition in this Court

in June 2004.  (State's Lodging I.)  Respondent does not contend that the second

application was not "properly filed," *see* 28 U.S.C. § 2244(d)(2); nor could he, as the

Idaho Court of Appeals addressed the merits of Petitioner's claims, and the Idaho

Supreme Court declined to review the case without comment.  (State's Lodgings J-5, p.

10; J-11.)  Therefore, the time that the overlapping application was pending in the state

courts also tolled the federal limitations period.  (State's Lodging J-11.)   Because

Petitioner's Amended Petition was filed long before the tolling period was lifted, all of

the claims that he included within that pleading are timely.

Respondent has a much better argument that this claim is procedurally defaulted.

He argues that the Idaho Court of Appeals declined to reach the merits during the direct

appeal after finding that "it was not the basis for an objection in the trial and is raised for

the first time on appeal." *See Nelson*, 953 P.2d at 657.  This Court is convinced that the

procedural rule upon which the Court of Appeals relied is an independent and adequate

**Memorandum Decision and Order - 15**

state law ground.[3]

Petitioner nevertheless contends that he was deprived of an opportunity to re-assert the claim when the Idaho Supreme Court denied his request to file a *pro se* supplemental brief during his first post-conviction appeal.  In support, he cites *Clemmons v. Delo*, 124 F.3d 944 (8th Cir. 1997).  In *Clemmons*, the Eighth Circuit Court of Appeals held that the requirement of fair presentation was satisfied when the petitioner in that case had filed an unsuccessful motion in the appellate court seeking permission to submit a *pro se* supplemental brief.  *Id.* at 948-49, 954.  Notably, in reaching that conclusion, the Court of Appeals stated that the petitioner had "called the attention of the Missouri Supreme Court" to his federal claims when seeking leave to file the supplemental brief.  *Id.* at 948.

*Clemmons* does not help Petitioner's cause.

First, Petitioner's claim here is based on alleged error that occurred during the trial.  A post-conviction proceeding does not substitute for potential remedies that were available at trial or on direct appeal.  Idaho Code § 19-4901(b).  Even if he had been permitted to file a supplemental brief, and if the Idaho appellate courts followed ordinary procedural rules, they would not have addressed the merits of a claim on collateral review that should have been preserved at trial and then raised on direct appeal.

Second, this Court previously distinguished *Clemmons*, and Petitioner has not

---

[3]  Earlier in this case, the Court reserved its ruling Respondent's Motion for Summary Dismissal as it pertained to this claim.  (Docket No. 73, p. 14.)  Nothing prohibited Respondent from renewing the procedural default defense, based on new arguments, when he filed his Answer to the Amended Petition. *See* Rule 5(b) of the Rules Governing Section 2254 Cases.  Petitioner's objection to the contrary is overruled.

**Memorandum Decision and Order - 16**

persuaded the Court to reconsider that decision.  (Docket No. 73, pp. 12-16.)  Unlike the

petitioner in *Clemmons*, Petitioner did not "call[] the attention of the [Idaho] Supreme

Court" to the particular federal claims that he wished to put before it.  In his Motion for

Substitution of Counsel, he alleged that he wanted to raise largely unspecified additional

"issues" in his supplemental brief that his assigned appellate counsel had refused to raise.

(State's Lodging D-9, pp. 3-4.)  In his Petition for Review, he elaborated slightly,

contending that he would have argued that the district court erroneously dismissed his

post-conviction petition on grounds not asserted by the State (a question of state law), and

he would have briefed "other issues not raised by the State Appellate Public Defender in

its Brief."  (State's Lodging D-5, p. 1; D-6, p. 14.)  The only examples of these "other

issues" were "the grand jury lacked the authority to indict Petitioner" and trial counsel

"fail[ed] to investigate grand jury, i.e., its term, etc."   (State's Lodging D-6, pp. 14-15.)

It is now clear that the state court had no obligation to wade through lower court filings in

search of potential federal issues that Petitioner may or may not have intended to include

within a supplemental brief.  *Baldwin v. Reese*, 541 U.S. 27, 32 (2004).

Although this claim is timely, it shall be dismissed as procedurally defaulted.

E.    Claim 19:  Sufficiency of the Evidence

Petitioner next alleges that he was deprived of due process of law because the

evidence was insufficient to support his conviction for first-degree kidnapping.  (Docket

No. 14, p. 24.)  This claim is timely for the same reason Claim 15 is timely.  Respondent

concedes that it is properly exhausted, and the Court will review the state court's decision

**Memorandum Decision and Order - 17**

under 28 U.S.C. § 2254(d).

Under state law, the State was required to prove beyond a reasonable doubt that Petitioner wilfully seized or confined K.M., a child under sixteen, against her will with the intent of detaining her for the purpose of committing lewd acts.  Idaho Code §§ 18-4501 -- 4502.  In finding the evidence sufficient to support the verdict, the Idaho Court of Appeals concluded as follows:

> A conviction will not be set aside where there is substantial, competent evidence upon which a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  *Jackson v. Virginia*, 443 U.S. 307 (1979).
>
> ***
>
> K.M. testified that shortly after Nelson brought her to his trailer he asked her to remove her clothing. When she refused to take off her clothes, he knocked her down onto his bed and began smothering her with a pillow. K.M. said that Nelson continued to hold and smother her in this manner until she agreed to remove her clothing. This testimony constitutes substantial, competent evidence from which the jury could reasonably find that Nelson confined K.M. in his trailer against her will.

*Nelson*, 953 P.2d at 659-60.

Petitioner cannot show that the state court's decision is contrary to or an unreasonable application of clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d).  This Court concurs that K.M.'s testimony that Petitioner knocked her down and smothered her with a pillow until she agreed to remove her clothing is sufficient to prove beyond a reasonable doubt that he confined her against her will.  Petitioner's planning

**Memorandum Decision and Order - 18**

and intent to commit a lewd act were likewise proven by evidence that he knew that

K.M.'s father would be out of state and that he requested her to come to his trailer alone.

Once in his home, the testimony showed that he did not permit her to leave, he forced her

to remove her clothes, and then he committed a sexual act on her, all of which further

shows his intent.  Petitioner's argument about conflicts in testimony is immaterial to the

standard of review under *Jackson*.  Relief on Claim 19 shall be denied.

     F.  <u>Claims 55-59: The Missing Evidence</u>

     K.M. alleged that during the sexual assault Petitioner rubbed baby oil on her and

that she then wiped herself with a towel or rag.  (State's Lodging A-4, p. 347.)  During a

search of Petitioner's residence, police officers collected numerous items, including a

bottle of baby oil, towels, and bedding.  (State's Lodging A-4, p. 361.)  Evidence from a

rape kit revealed that K.M.'s anal area and underwear contained baby oil, and the State

presented expert testimony at trial that the oil in the rape kit and the bottle that was found

in Petitioner's residence likely belonged to the same 6,000-gallon batch that was

produced by a single national manufacturer.  (State's Lodging A-4, pp. 709, 724.)  Law

enforcement officers also testified that one of the towels that they had collected appeared

to have an oily substance on the surface, but the towel was never presented to the jury.

     Petitioner's last five habeas claims center primarily on the towels and other

associated items that were collected but not offered into evidence at trial.  In Claims 55

and 56, Petitioner alleges that his trial counsel was constitutionally ineffective in failing

to investigate this matter more thoroughly, including testing the items for DNA.  In

**Memorandum Decision and Order - 19**

Claims 57, 58, and 59, he alleges in various permutations that the State's failure to disclose items to the defense, and, later, the destruction of the evidence by State officials, violated his right to due process of law.  Respondent counters that these claims are untimely, procedurally defaulted, and fail on the merits.

        1.     <u>Ineffective Assistance of Counsel</u>

The Court concludes that Claims 55 and 56 are timely.  After Petitioner filed his first application for post-conviction relief in late 1999, he pursued overlapping post-conviction actions or other collateral motions in the state courts essentially continuously until November 6, 2007.  (State's Lodging L-15.)  In the absence of a more specific argument from Respondent as to which, if any, of these last collateral actions were not properly filed under state law, *see* 28 U.S.C. § 2244(d)(2), the Court will presume that the limitations period was statutorily tolled for that entire time.  Claims 55 and 56 were presented to this Court on May 3, 2006, before the limitations period expired.  (Docket No. 49.)

However, the claims are procedurally defaulted.  While Petitioner attempted to argue that his counsel was ineffective on these same grounds during his second post-conviction appeal, the Idaho Court of Appeals concluded that he had waived his allegations for not raising them sooner.[4]  (State's Lodging J-5.)  The state court applied

---

[4] The subject matter of both Claims 55 and 56 is essentially the same, except that Claim 55 relates more to counsel's pretrial and trial investigation, and Claim 56 relates to counsel's representation during the post-trial phase.  The Idaho Court of Appeals addressed counsel's performance in this area as a single claim.

**Memorandum Decision and Order - 20**

Idaho Code § 19-4908, which bars claims in a successive petition that either were or could have been raised in an earlier post-conviction action, unless the court finds a "sufficient reason" for the failure to raise the claim properly in the first action.  The state court determined that Petitioner had "not provided any reason for not asserting this ineffective assistance of trial counsel claim in his first application for post-conviction relief."  (State's Lodging J-5, p. 5.)  Respondent has demonstrated that Idaho's successive petition bar is adequate to prevent federal review because it is clear, consistently applied, and well-established at the time of Petitioner's default.  *See, e.g., Wells v. Maas*, 28 F.3d 1005, 1010 (9th Cir. 1994).

Alternatively, the claims fail on the merits because Petitioner is unable to establish any prejudice under *Strickland v. Washington*, 466 U.S. 668, 686-87 (1984).  Petitioner suggests that had the towels been examined and tested, and had that testing proven that neither his DNA nor baby oil were on the towels, his defense would have been greatly enhanced.  This argument is based on unwarranted assumptions and speculation.  It is just as likely, if not more so, that scientific test results would have corroborated K.M.'s allegations and the police officers' testimony that they saw an oily substance on one of the towels.  *See Grigsby v. Blodgett*, 130 F.3d 365, 373 (9th Cir. 1997) ("[s]peculation about what an expert could have said is not enough to establish prejudice").

More importantly, the trial evidence strongly corroborated K.M.'s claims, and the force of the incriminating evidence would not have been diluted even if the proposed testing came back as Petitioner wished.  K.M. immediately reported the sexual assault to

**Memorandum Decision and Order - 21**

her neighbor and her grandmother, and she was taken to the hospital.  (State's Lodging A-4, pp. 265-71.)  Although the emergency room physician did not find evidence of trauma requiring surgery, a nurse practitioner's more specialized examination for sexual assault revealed that K.M. had abrasions on her body and that her anal tissue had a "boggy appearance," suggesting swelling.  (State's Lodging A-4, p. 458.)  The nurse practitioner believed that results were "consistent with there being blunt force trauma to the opening of the anus."  (State's Lodging A-4, p. 464.)  Additionally, Petitioner has offered no explanation for how baby oil came to be on K.M.'s body and underwear, and a negative test result on a towel found in his home would not help him do so.  In short, Petitioner cannot show a reasonable probability of a different outcome but for his counsel's alleged failure to investigate or test the towels.

       For all of these reasons, relief shall be denied.

               2.    <u>Destruction of Evidence</u>

       In related Claims 57, 58, and 59, Petitioner alleges that his due process rights were violated when the towels and other items of possible evidentiary value were not disclosed before trial and then were lost or destroyed after trial.

       Petitioner raised Claim 57--the destruction of the towels--in this Court on May 3, 2006, and it is timely, but Claims 58 and 59 were first tendered as part of a Supplement filed in April 2008.  (Docket No. 99.)  Because the federal statute of limitations would have expired, at the latest, within a matter of days after statutory tolling was lifted at the conclusion of Petitioner's last state court matters in November 2007, the Supplement was

**Memorandum Decision and Order - 22**

several months out of time.  *Cf. Duncan v. Walker*, 533 U.S. 167, 179, 181 (2001)

(holding that a pending federal petition does not toll the limitations period).  In any event,

all three claims are procedurally defaulted.  Though Petitioner pressed similar issues in

the state district court in his most recent collateral actions, his appeals were dismissed

when he failed to file an opening brief as ordered.  (State's Lodging L-12.)  Respondent

has demonstrated that the requirement of filing a timely opening brief is a clearly

established and consistently applied state procedural rule.

Even if these procedural barriers were disregarded, Petitioner would not be entitled

to relief.  He does not have a valid claim under *Brady v. Maryland*, 373 U.S. 83, 87

(1963), because there is no indication that any non-disclosed item actually held

exculpatory value to him.  More to the point, Petitioner does not have any evidence that

the towels did *not* contain an oily substance or his genetic material, or that the testing of

any other items would have been favorable to him.  The most that can be said is that some

items might have been potentially useful.

The United States Supreme Court has held that "unless a criminal defendant can

show bad faith on the part of the police, failure to preserve potentially useful evidence

does not constitute a denial of due process of law."  *Arizona v. Youngblood*, 488 U.S. 51,

57 (1988).  *Youngblood* involved evidence that was destroyed *before* trial, and it has yet

to be conclusively determined whether the right it extends to evidence that the police

failed to preserve after trial, as in this case.  *See, e.g., Ferguson v. Roper*, 400 F.3d 635,

638 (8th Cir. 2005); *cf. Lovitt v. True*, 403 F.3d 171, 187 (4th Cir. 2005) (noting that

**Memorandum Decision and Order - 23**

[e]xtending the destruction of evidence rule ... might impermissibly create a 'new rule' on

federal habeas review").  Moreover, the items about which Petitioner complains appear to

have been destroyed as part of routine law enforcement policies and procedures, and there

is no showing or inference of bad faith.[5]  (State's Lodging K-11; Docket No. 103, exhibit

A and attachments.)   Aside from speculation, he has pointed to nothing in the record

tending to show that State officials had reason to believe that this evidence might contain

potential exculpatory value and yet destroyed the evidence anyway.  The negligent

destruction of evidence will not support a due process violation.  *Youngblood*, 488 U.S. at

58.

## IV.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED:

1. Petitioner's Motion for Leave of Court to File Oversize Brief (Docket No. 144) is GRANTED.

2. Petitioner's Motion to Reconsider the Court's procedural default order of October 5, 2006  (Docket No. 143) is DENIED.

3. Respondent's Motion to Dismiss Additional Procedurally Defaulted Claims (Docket No. 116) is GRANTED as to Claims 15, 55, 56, 57, 58 and 59.  It is DENIED as to all other claims.

---

[5]  Petitioner's reliance in state court on Idaho Court Administrative Rule 38 is misplaced, as that rule governs the retention of court records and exhibits.  These items were never offered as exhibits, were not part of the court file, and were instead in the custody of law enforcement agencies.

4.      Respondent's Motion to Dismiss Untimely Claims (Docket No. 117) is

GRANTED as to Claims 58 and 59.  It is denied as to all other claims.

4.      Respondent's Motion for Summary Judgment (Docket No. 115) is

GRANTED.

5.      Petitioner's Motion for Partial Summary Judgment (Docket No. 107) is

DENIED.

6.      Because no habeas claims remain unresolved, this case shall be dismissed.

DATED:  **March 23, 2009**.

Honorable Larry M. Boyle
United States Magistrate Judge

**Memorandum Decision and Order - 25**